IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BRENDA LILIANA MEJICANOS CUYUN,<br><br>Petitioner,<br><br>vs.<br><br>KEVIN RAYCRAFT, DIRECTOR OF DETROIT FIELD OFFICE U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al*.,<br><br>Respondents. | CASE NO. 3:25-CV-02785-JJH<br><br>JUDGE JEFFREY J. HELMICK<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

On December 23, 2025, Petitioner Brenda Liliana Mejicanos Cuyun filed a petition under 28 U.S.C. § 2241 for a writ of habeas corpus. (ECF #1). She is currently detained in the Corrections Center of Northwest Ohio in Stryker, Ohio. She requests release from Immigration and Customs Enforcement (ICE) custody or an order directing the Immigration Court to hold a bond hearing because her detention without the possibility of a bond hearing is unconstitutional. This matter was referred to me for preparation of a Report and Recommendation. (Non-document entry of Dec. 29, 2025). After review of the record and applicable law, I recommend the District Court conditionally grant the petition.

**PROPER RESPONDENT**

Initially, Respondents argue the sole proper respondent is Kevin Raycraft,[1] Director of the ICE Detroit Field Office and so Respondents Kristi Noem, Secretary of the Department of Homeland Security, and Pamela Bondi, United States Attorney General, should be dismissed as parties.

In the context of a habeas corpus petition filed by an alien detained in a local detention facility contracted by ICE, the Sixth Circuit has held that "although the warden of each detention

[1] Kevin Raycraft has replaced Rebecca Adducci as Director of the ICE Detroit Field Office so he is automatically substituted for her as a respondent under Fed. R. Civ. P. 25(d).

facility technically has day-to-day control over alien detainees, the [ICE District] Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners." *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003). Therefore, "a detained alien generally must designate his immediate custodian—the [ICE] District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Id.; see also Woldeghergish v. Lynch,* No. 1:25-cv-461, 2025 WL 2469584, at * 1 (S.D. Ohio Aug. 5, 2025), *report and recommendation adopted*, 2025 WL 2468042 (S.D. Ohio Aug. 27, 2025); *Hango v. McAleenan*, No. 1:19-cv-00606, 2019 WL 7944352, at *2-3 (N.D. Ohio Nov. 13, 2019) (granting motions to dismiss by Department of Homeland Security Secretary, United States Attorney General, and County Sheriff because only the Field Director of the ICE Detroit Field Office is the proper respondent), *report and recommendation adopted,* 2019 WL 6695829 (N.D. Ohio Dec. 9, 2019).

The Sixth Circuit has also recognized possible exceptions to the immediate-custodian rule, explaining:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez-Rivas [v. Olsen]*, 194 F.Supp.2d [368] at 374 [(D.N.J. 2002)]. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft*, 216 F.Supp.2d 51, 55 (E.D.N.Y.2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."). In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher-level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias-Agramonte [v. C.I.R.*, No. 00 CIV. 2412(RWS)], 2000 WL 1617999, at *8 [(S.D.N.Y. Oct. 30, 2000)] (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Roman,* 340 F.3d at 325-26 (cleaned up). Thus, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326. Recently, some district courts in the Sixth Circuit have not dismissed the higher-level officials from similar proceedings to ensure that Respondents maintain authority to enforce the court's grant of habeas relief. *Sanchez Alvarez v. Noem,* ___ F.Supp.3d ___, 2025 WL 2942648, at *9 (W.D. Mich.

Oct. 17, 2025) (declining to dismiss the Secretary of Homeland Security as respondent); *Gimenez Gonzalez v. Raycraft*, ___ F.Supp.3d ___, 2025 WL 3006185, at *5 (E.D. Mich. Oct. 27, 2025) (same for the Attorney General).

To ensure that Respondents maintain authority to enforce a grant of habeas relief and order that Petitioner receive a bond hearing even if Petitioner is transferred out of the district under Respondent Raycraft's control, I recommend the District Court not dismiss Secretary Noem and Attorney General Bondi as Respondents to these proceedings.

## Background

Petitioner is a native and citizen of Guatemala. (ECF #5-1 at PageID 104). She entered the United States in September 2004, near Hidalgo, Texas, without admission or parole and without inspection by an immigration officer. (*Id.*). Petitioner has lived in the United States for over 21 years. She was detained by ICE on September 22, 2025, and has been in custody since then for a total of 141 days as of the date of this Report and Recommendation. Upon her arrest, she was issued a Notice to Appear identifying her as "an alien present in the United States without being admitted or paroled" and charging her with inadmissibility under two bases. First, under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) (codified at 8 U.S.C. § 1182(a)(6)(A)(i)) as an immigrant who is present in the United States without having been admitted or paroled, or who arrived in the country at any time or place other than designated by the Attorney General. Second, under § 212(a)(7)(A)(i)(I) of the INA (8 U.S.C. § 1182(a)(7)(A)(i)(I)) as an immigrant who, at the time of application for admission, is not in possession of a valid entry document required by the INA, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under § 211(a) of the INA (8 U.S.C. § 1181(a)). (ECF #5-1 at PageID 104).

On December 2, 2025, the Cleveland Immigration Court denied Petitioner's request for custody redetermination in an order simply stating: "Denied, because No Jurisdiction." (ECF #1-3 at PageID 27). Petitioner reserved her right to appeal the immigration judge's (IJ) determination but had not appealed that decision as of December 23, 2025, the date she filed this petition. (*Id.* at PageID 28; *see also* ECF #1 at PageID 2).

Petitioner argues that without an order from this Court, she will remain detained without due process for the duration of her immigration removal proceedings without a bond hearing,

potentially months to years longer during appeals, because she is being improperly detained under 8 U.S.C. § 1225(b)(2)(A). (ECF #1 at PageID 19-21). That provision subjects an alien to mandatory detention until the conclusion of removal proceedings. *See Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018). According to Petitioner, the mandatory detention statute simply does not apply to her. (ECF #1 at PageID 14). Petitioner contends she is instead subject to detention under § 1226(a), where detention pending removal proceedings is discretionary. Respondents argue Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A). (ECF # 5 at PageID 83).

**HABEAS CORPUS JURISDICTION**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained in the United States." *Hamdi v. Rumsfeld,* 542 U.S. 507, 525 (2004). The primary habeas statute explicitly authorizes federal courts, including district courts, the power to issue the writ to persons "in custody in violation of the Constitution or laws or treatises of the United States." 28 U.S.C. § 2241(c)(3). True, a district court's habeas powers are limited in the immigration context. *See Hamama v. Adducci,* 912 F.3d 869, 876 (6th Cir. 2018) (explaining "Congress stripped the courts of jurisdiction to grant habeas relief" for challenges to removal orders). Nevertheless, "[f]ederal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal." *Jiang Lu v. U.S. ICE,* 22 F.Supp.3d 839, 841 (N.D. Ohio 2014) (citing *Denmore v. Kim,* 538 U.S. 510, 517-18 (2003) (holding that 8 U.S.C. § 1226(e) of the INA limiting judicial review of discretionary judgments regarding detention and release did not strip the Court of jurisdiction to grant habeas relief in the context of a challenge to detention under the no-bail provision of the INA)); *see also Zadvydas v. Davis,* 533 U.S. 678, 688 (2001) (holding that although a court "may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution").

Respondents argue three provisions of the INA bar review of Petitioner's claims: 8 U.S.C. §§ 1252(e)(3), 1252(g), and 1252(b)(9). I address each provision in turn.

I. **8 U.S.C § 1252(e)(3)**

According to Respondents, § 1252(e)(3) deprives most district courts of "jurisdiction, including habeas corpus jurisdiction, over Petitioner's challenge to her detention under § 1225(b)(2)(A)." (ECF #6 at PageID 144). That provision states:

> Judicial review of determinations under [8 U.S.C. § 1225(b)] and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—
>
> (I) whether such section, or any regulation issued to implement such section, is constitutional; or
>
> (II) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A).

Applying this section is a non-sequitur because Petitioner does not challenge the constitutionality or validity of a statutory scheme, a regulation, or a written policy; rather, she challenges the application to her of the statute under which she is detained. (ECF #1 at PageID 11-18). Accordingly, § 1252(e)(3) does not deprive this district court of jurisdiction over Petitioner's claims. *See Bartolon v. Bondi*, ___ F.Supp.3d ___, 2025 WL 3674604, at *5 (S.D. Ohio Dec. 18, 2025); *Maltos v. Noem*, No. 1:25-cv-1299, 2025 WL 3550605, at *2 (W.D. Mich. Dec. 11, 2025); *Ardon-Quiroz v. Assistant Field Director*, No. 25-cv-25290, 2025 WL 3451645, at *3 (S.D. Fla. Dec. 1, 2025) (collecting cases for the proposition that § 1252(e)(3) does not deprive federal district courts of jurisdiction to review detention-based claims).

**II. 8 U.S.C. § 1252(g)**

Next, Respondents invoke § 1252(g), which limits the jurisdiction of federal courts as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or non-statutory,) including [28 U.S.C. § 2241], or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against an alien under this chapter.

8 U.S.C. § 1252(g). Respondents argue because the decision to detain an alien pending removal proceedings arises from the decision to commence removal proceedings against an alien, § 1252(g) bars review of Petitioner's detention-based claims. (ECF #6 at PageID 145).

Both the Supreme Court and the Sixth Circuit have rejected Respondents' expansive interpretation of § 1252(g). In *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), the Supreme Court held the provision does not cover "the universe of deportation claims," but "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482 (emphasis in original). In *Jennings,* a plurality of the Supreme Court reaffirmed § 1252(g)'s narrow scope: "[In *Reno,*] [w]e did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."583 U.S. at 294 (plurality op.). The Sixth Circuit also distinguishes challenges to noncitizen removal from challenges to noncitizen detention. *See Hamama,* 912 F.3d at 877 (noting that a "district court's jurisdiction over the detention-based claims is independent of its jurisdiction over removal-based claims"). Thus, if a petitioner "raise[s] a challenge that [does] not require the district court to address the merits of [their] order of removal," § 1252(g) does not strip the district court of jurisdiction. *Elgharib v. Napolitano,* 600 F.3d 597, 605 (6th Cir. 2010) (citation omitted).

Here, Petitioner does not challenge the commencement of removal proceedings against her, the adjudication of her case before the immigration court, or the execution of an order of removal. Instead, she challenges her continued detention without bond pending removal proceedings because the mandatory detention provision under which she is detained does not apply to her. (ECF #1 at PageID 11-18). Her claims thus fall outside the narrow scope of § 1252(g).

**III. 8 U.S.C. § 1252(b)(9)**

Last, Respondents argue that § 1252(b)(9) channels judicial review of Petitioner's claims to the court of appeals, not the district court. (ECF #8 at PageID 145-47). The provision states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under [8 U.S.C. §§ 1151-1382] shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under [28 U.S.C. § 2241] or any other habeas provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or non-statutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). According to Respondents, this provision divests district courts of jurisdiction to review "direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or proceedings." (ECF #8 at PageID 146-47). Citing Justice Thomas's concurrence in *Jennings,* Respondents argue that detention is an action taken to remove an alien and therefore the district court does not have jurisdiction. (*Id.* at PageID 147). For the following reasons, this argument is unavailing.

While Respondents rely on Justice Thomas's concurrence in *Jennings*, the plurality opinion rejected Respondents' expansive interpretation of § 1252(b)(9). In *Jennings,* the Supreme Court considered a group of noncitizens' claims challenging their prolonged detention under 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention. 583 U.S. at 291. Contemplating its jurisdiction, the Court stated that applicability of § 1252(b)(9) "turns on whether the legal questions that we must decide 'aris[e] from' the actions taken to remove the aliens." *Id.* at 292. The Court noted that if taken to extremes, the expansive interpretation of § 1252(b)(9) to detention claims "would [ ] make claims of prolonged detention effectively unreviewable" until the petitioner is subject to a final order of removal. *Id.* Explaining the harm in that, the Court stated: "By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving the detainee of any meaningful change for judicial review." *Id.* In light of those considerations, the Court determined § 1252(b)(9) was not a jurisdictional bar because the petitioners "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Id.* at PageID 294; *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("As we have said before, § 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which removability will be determined.'") (quoting *Jennings*, 583 U.S. at 294-95).

Here, Petitioner does not challenge an order of removal, the decision to detain her in the first place or seek removal, or the process by which removability is decided. Instead, she challenges her prolonged continued detention without a proper bond hearing, arguing mandatory detention

under § 1225 does not apply to her, rather detention with a bond hearing under § 1226(a) applies. Thus, § 1252(b)(9) does not strip this Court of jurisdiction to hear Petitioner's claims. *See, e.g.*, *Zelaya v. Lynch*, No. 1:25-cv-1355, 2025 WL 3496472, at *2-3 (W.D. Mich. Dec. 5, 2025); *Ocanto v. Lynch*, No. 1:25-cv-1447, 2025 WL 3522113, at *3 (W.D. Mich. Dec. 9, 2025); *Ramirez v. Lewis*, No. 4:25-cv-143, 2025 WL 3553676, at *2 (W.D. Ky. Dec. 11, 2025); *Cortez v. Lynch*, No. 1:25-cv-822, 2026 WL 82039, at *3 (S.D. Ohio Jan. 12, 2026).

To the Respondents' point that Justice Thomas's concurrence supports their view of § 1252(b)(9) as stripping this Court of jurisdiction, the plurality in *Jennings* expressly rejected that interpretation:

> The concurrence contends that "detention *is* an 'action taken . . . to remove' an alien" and that therefore "even the narrowest reading of 'arising from' must cover the claims raised by respondents. We do not follow the logic. We will assume for the sake of argument that detention is an action taken "to remove an alien," *i.e.*, for the purpose of removing an alien, rather than simply an action aimed at ensuring that the alien does not flee or commit a crime while his proceedings are pending. But even if we proceed on the basis of that assumption, we do not see what it proves. The question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in the case arise from such an action. And for the reasons explained above, those legal questions are too remote from the actions taken to fall within the scope of § 1252(b)(9).

*Jennings*, 583 U.S. at 295 n.3 (emphasis in original); *see also Dep't of Homeland Sec.*, 591 U.S. at 19 (quoting *Jennings*, 583 U.S. at 294-95).

Finally, Respondents recognize that habeas is the traditional means to secure release from unlawful detention but argue that Petitioner is not asking for a "simple release," but "a review of her case in removal proceedings that may allow her to remain in the United States." (ECF #8 at PageID 147-48). Not so. Petitioner notes that she has applied for cancellation of removal under the Violence Against Women Act, but she does not challenge Respondents' authority to remove Petitioner or the validity of her removal proceedings in her petition.

For those reasons, I recommend the District Court find that it has jurisdiction to consider Petitioner's claims.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Respondents next argue the Court should dismiss the petition because Petitioner has not yet appealed the IJ's denial of bond to the Board of Immigration Appeals (BIA) and therefore has not exhausted her administrative remedies.

Generally, a party must exhaust administrative remedies before seeking relief from the federal courts. *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992). "Exhaustion of administrative remedies serves numerous purposes, including protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record." *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003). Exhaustion is required when Congress specifically mandates it, but when no statute requires a petitioner to administratively exhaust his remedies (as is the case here), the decision to require exhaustion is within the sound discretion of the court. *McCarthy*, 503 U.S. at 144; *see also Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013); *Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994) (concluding exhaustion requirements not written into the text of the statute are prudential).

District courts in this Circuit have widely recognized while recently grappling with cases like this one, "[t]he Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (collecting cases). Nor has the Sixth Circuit formally adopted a standard for deciding when prudential exhaustion applies. But many courts in this Circuit have applied the three-factor test used in *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007). There, the court applied its own prudential exhaustion standard in the immigration context, requiring prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga*, 488 F.3d at 815. If a petitioner does not exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

Nonetheless, even if the factors weigh in favor of requiring exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted); *see Shearson,* 725 F.3d 588.

Here, the first *Puga* factor favors waiving the exhaustion requirement. Whether an alien is detained under § 1226(a) and thus entitled to a bond hearing rather than mandatory detention under § 1225(b)(2)(A) is principally a legal question of statutory interpretation that does not require the record that would be developed by appealing to the BIA. *See McKart v. United States,* 395 U.S. 185, 197-98 (1969) (explaining that a case's focus on issue of statutory interpretation that did not implicate agency's expertise favored excusing exhaustion). Moreover, as recently determined, courts are not bound by and are not required to give deference to an agency's interpretation of a statute. *See Loper Bright Enter. v. Raimondo,* 603 U.S. 369, 413 (2024) (noting that "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority.").

Second, it does not appear that relaxing the exhaustion requirement on this particular legal question would encourage the deliberate bypass of the administrative scheme because resolution of the underlying question will provide definitive guidance for future administrative proceedings. Once the legal question is resolved, the issue should cease to arise. *See Rodriguez v. Bostock,* 779 F.Supp.3d 1239, 1251-52 (W.D. Wash. Apr. 24, 2025).

Finally, it is doubtful that BIA review of Petitioner's custody would allow the agency to correct its own mistakes and to preclude the need for judicial review. In *Matter of Yajure Hurtado,* 29 I&N Dec. 216, 220 (BIA 2025), the BIA affirmed the IJ's determination that he "did not have authority over [a] bond request because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." That decision, not binding on judicial courts but binding on the agency and immigration courts, conclusively rejects Petitioner's arguments in this case. Thus, an appeal to the BIA would not preclude the need for judicial review but simply delay it.

Nonetheless, even if the factors weigh in favor of requiring exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing*, 370 F.3d at 100 (citation omitted); *see Shearson*, 725 F.3d 588. Alluded to above, an appeal to the BIA would be a futile gesture. The BIA is bound by the decision in *Yajure Hurtado,* so there is no room for that administrative body to reach any conclusion other than to affirm the IJ's determination that he lacked authority to consider Petitioner's custody redetermination request. *See Houghton v. Shafer,* 392 U.S. 639, 640 (1968) (in view of Attorney General's submission that the challenged rules of the prison were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act").

The factors weigh against requiring administrative exhaustion and, in the alternative, requiring administrative exhaustion would be futile. For those reasons, I recommend the District Court waive the prudential exhaustion requirement. *See Puerto-Hernandez v. Lynch*, ___ F.Supp.3d ____, 2025 WL 3012033, at *6 (W.D. Mich. Oct. 28, 2025); *Velasco-Sanchez v. Raycraft,* No. 2:25-cv-13730, 2025 WL 3553672, at *5 (E.D. Mich. Dec. 11, 2025).

## MERITS REVIEW

### I. Statutory Basis for Petitioner's Detention

For decades, noncitizens already present in the United States at the time of their arrest, like Petitioner, have been considered subject to discretionary detention. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). In July 2025, an internal memorandum entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission" deemed all persons who entered the United States without inspection "applications for admission" under § 1225(a) and, therefore, subject to

mandatory detention under § 1225(b)(2)(A).[2] Then, in September 2025, the BIA affirmed an IJ's determination that he did not have authority over the alien's bond request "because aliens who are present in the United States without admission are applicants for admission" as defined under 8 U.S.C. § 1225(b)(2)(A) and "must be detained for the duration of their removal proceedings." *Yajure Hurtado,* 29 I&N Dec. at 220.

The two primary statutes at issue are 8 U.S.C. §§ 1225 and 1226. Both statutes generally govern the detention of noncitizens pending removal proceedings. Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States" and, except as provided in § 1226(c), the Attorney General may detain the arrested alien or release the alien on bond. 8 U.S.C. § 1226(a). Section 1226(a) does not identify the burden of proof applicable at bond hearings, but BIA precedent provides that "[t]he burden is on the alien to show to the satisfaction of the [IJ] that [she] merits release on bond." *In re Guerra,* 24 I&N Dec. 37, 40 (BIA 2006). To prove release is warranted, the alien must show that she "does not present a danger to persons or property, is not a threat to national security, and does not pose a risk of flight." *Id.* at 38.

The question is which statute governs: § 1225(b)(2)(A) (which mandates Petitioner's detention pending removal proceedings) or § 1226(a) (which means Petitioner's detention is discretionary, thus entitling Petitioner to a bond hearing). Answering that question boils down to the interpretation of §§ 1225 and 1226. "A statute should be construed so that effect is given to all

---

[2] To my knowledge, the policy memorandum is not available on any government website. Another district court recently explained this policy memo was "leaked by legal advocacy groups" and quoted it as stating: "DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that [§ 1225] of the [INA], rather than [§ 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde,* ___ F.Supp.3d ____, 2025 WL 2084238 at *4 n.10 (D. Mass. July 24, 2025). Also, to my knowledge, the government has not denied the existence of the memo.

its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *see Corley v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (noting that courts "must give effect to the clear meaning of statutes as written") (citation omitted). "When interpreting a statute, the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation omitted). But "the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 576 U.S. 473, 486 (2015) (quotation omitted). "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). The Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright*, 603 U.S. at 400. Importantly, the title of the statute and the heading of a section within the statute are instructive for resolving doubt about the meaning of the statute. *Lopez-Campos v. Raycraft,* No. 2:25-cv-12486, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025); *see also Dubin v. United States,* 599 U.S. 110, 120-21 (2023) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of the statute.") (internal quotations and citations omitted).

Under § 1225, an alien who "arrives in the United States, or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." 8 U.S.C. § 1225(a)(1). The terms "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See* 8 U.S.C. § 1101(a)(13)(A). Section 1225(b)(2)(A) provides for the detention "of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Noncitizens detained under § 1225(b)(2)(A) may be released only if they are paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States" and, except as provided in § 1226(c), the Attorney General may detain the arrested alien or release the alien on bond. 8 U.S.C. § 1226(a).

For the reasons discussed below, I conclude § 1226(a) applies to Petitioner and the IJ therefore has jurisdiction to consider her custody redetermination request.

Citing *In re Yajure Hurtado,* Respondents argue the plain language of § 1225(b)(2)(A) unambiguously applies to Petitioner because she is present in the country but not admitted, and that set of circumstances makes her both an "applicant for admission" and an "alien seeking admission," thus subjecting her to detention under § 1225(b)(2)(A) and hence ineligible for a bond redetermination hearing. (ECF #6 at PageID 154-55). In essence, Respondents contend that an "alien seeking admission" is just another way of saying the alien is an "applicant for admission." (*Id.* at PageID 155). Several problems arise with this interpretation.

For one, under the plain language of the statute, a noncitizen is subject to mandatory detention if the noncitizen is an "applicant for admission" who is also "seeking admission," a two-fold determination. Respondents' position that the two terms mean the same thing violates the canon of statutory interpretation that "every clause and word of a statute should have meaning." *United States ex rel. Polansky v. Exec. Health Res., Inc.,* 599 U.S. 419, 432 (2023). As one district court recently explained:

> That is because if the mandatory detention provision in § 1225(b)(2) applied to *all* noncitizens who are "applicants for admission," then there would be no need for Congress to have separately referenced a sub-category of persons "seeking admission" in the specific section that relates to mandatory detention. Adopting Respondents' position would thus require the Court to "elide[] or avoid[] § 1225(b)(2)(A)'s 'seeking admission' language . . . , treating it as mere surplusage of the 'applicant requirement.'
>
> * * *
>
> And it is not just subsection § 1225(b)(2)(A) that undermines Respondents' position. In interpreting the language of a statute, courts "must read the words in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 486 (2015) (internal quotation marks omitted). The duty of a court is to "construe statutes, not isolated provisions." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010) (internal quotation marks omitted). In considering § 1225(b)(2)(A) within its statutory context, it was clearly intended to apply to noncitizens who are presently seeking to enter the United States, and not those, like Hyppolite, who have lived in the country for almost three years. Notably, Section 1225(b)(2)(A) is "[s]ubject to subparagraphs (B) and (C)," which provide, inter alia, that subparagraph A does not apply to "crewm[e]n" or to a "stowaway," 8 U.S.C. § 1225(b)(2)(B), and that "[i]n the case of an alien described in

> subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(C). This makes it clear that the category of applicants for admission covered by § 1225(b)(2) who are "seeking admission" is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering — not those in Hyppolite's circumstances.

*Hyppolite v. Noem,* ___ F.Supp.3d ___, 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025) (cleaned up). For those reasons, the agency's interpretation of the statutes in *Yajure Hurtado* do not comport with the plain language of the statute.

Next, if an "applicant for admission" is not synonymous with an "alien seeking admission," then it is difficult to see how a noncitizen who is already present in the country can also be "seeking admission" into the United States. The phrase "seeking admission" is not defined in the statute. In the Merriam-Webster Dictionary, "seeking" is defined as "go[ing] in search of," "ask[ing] for," and "try[ing] to acquire or gain," among other things. *Seeking, Merriam-Webster Dictionary,* http://www.merriam-webster.com/dictionary/seeking (last accessed February 10, 2026). The word "necessarily implies some sort of present-tense action." *Martinez v. Hyde,* 792 F.Supp.3d 211, 218 (D. Mass. July 24, 2025). Other courts in the Sixth Circuit have similarly found that a noncitizen who is present in the country for years but never tried to obtain lawful entry (such as by applying for asylum, permanent residency, refugee status, or other form of citizenship), like Petitioner, is not "seeking admission." *See, e.g., Lopez-Campos v. Raycraft,* 797 F.Supp.3d 771, 781 (E.D. Mich. Aug. 29, 2025); *Del Villar v. Noem,* No. 4:25-cv-137, 2025 WL 3231630, at *5 (W.D. Ky. Nov. 19, 2025); *see also Chavez v. Dir. of Detroit Field Office,* No. 4:25-cv-2061, 2025 WL 3187080, at *4 ("Indeed, it would strain the words of the statute to say that one who has been in the United States since 2001 is seeking to enter it.") (citation omitted).

Moreover, the Supreme Court has clarified that §§ 1225 and 1226 apply in different circumstances. In *Jennings,* a majority of the Court noted § 1225 as part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *See* 583 U.S. at 287. Meanwhile, § 1226 applies to the process of "arresting and detaining" aliens who are already living in the country but are still subject to removal. *See id.* at 288. Thus, in *Jennings*, the Supreme Court

differentiated between noncitizens arriving to the United States (who are governed by § 1225 and subject to mandatory detention) and noncitizens already present in the country (who are governed by § 1226 and subject to discretionary detention).

Finally, there is an argument to be made that interpreting § 1225(b) to subject every noncitizen who has not been admitted, *i.e.*, granted lawful entry into the country after inspection, to mandatory detention would render recent amendments to § 1226(c) entirely unnecessary. As another district court recently explained:

> Congress amended § 1226 this year via the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025). The Laken Riley Act added § 1226(c)(1)(E), which mandates detention for noncitizens who are inadmissible under §§ 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) and have been arrested for, charged with, or convicted of certain crimes. § 1226(c)(1)(E)(i)-(ii). Considering that § 1182(a)(6)(A)(i) specifically refers to aliens "present in the United States without being admitted or paroled," and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well. *Gomes v. Hyde*, ___ F.Supp.3d ___, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025). That is, because an alien present in the United States without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," ICE would never need to rely on § 1226(c)(1)(E) to detain them. *Id.; see Marx v. Gen. Rev. Corp.*, 568 U.S 371, 386 (2013) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"). As a district court in Massachusetts explained, "[s]uch an interpretation would largely nullify a statute Congress enacted this very year, [and] must be rejected." *Gomes*, 2025 WL 1869299, at *7.

*Pizarro Reyes*, 2025 WL 2609425, at *5.

The foregoing considerations lead me to conclude that § 1226(a), not § 1225(b)(2)(A), applies to Petitioner who has lived in this country for over 20 years. She is therefore subject to discretionary detention, and so she may appropriately seek a bond redetermination hearing.

## II. Due Process

Now I address whether Petitioner's continued detention is a violation of due process. I find that it is.

The Fifth Amendment guarantees freedom from deprivation of life, liberty, or property without due process of law. U.S. Const. amend. V. The Due Process Clause extends to all

"persons" regardless of status, including noncitizens. *A.A.R.P. v. Trump,* 605 U.S. 91, 94 (2025). To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test in *Matthews v. Eldridge*, 424 U.S. 319 (1976). Under that test, a court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. Here, Respondents very briefly address the Due Process claim, stating that "Petitioner's due process rights are protected by the immigration statutes" and she "has not shown that those protections are insufficient," but they present no argument related to the *Matthews* balancing test.

There is no dispute that Petitioner has a private interest in avoiding detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the noncitizen's condition of confinement to determine if the conditions are indistinguishable from criminal incarceration. *Martinez v. Noem*, No. 5:25-cv-1007, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025). Petitioner is being detained at the Corrections Center of Northwest Ohio, a state-run correctional facility housing both pre-trial detainees and sentenced inmates. (ECF #1 at PageID 2). She has children that are U.S. citizens or lawful permanent residents and she has no criminal record. (*Id.* at PageID 9).

The second factor concerns the risk of erroneous deprivation of Petitioner's liberty. Because Petitioner is not subject to mandatory detention under § 1225(b)(2)(A), but to discretionary detention under § 1226(a), she is entitled to a custody redetermination hearing. The risk of erroneously depriving her of her freedom is high if the IJ does not assess her risk of flight and dangerousness. *Pacheo Mayen v. Raycraft,* No. 2:25-cv-13056, 2025 WL 2978529, at *10 (E.D. Mich. Oct. 17, 2025); *Lopez-Campos,* 797 F.Supp.3d at 785.

The last *Matthews* factor concerns the government's interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews,* 424 U.S. at 335. As other district courts in the Sixth Circuit have recognized, the government has a strong interest in ensuring noncitizens do not harm their community and appear for future immigration

proceedings. *Edahi v. Lewis,* No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025); *Puerto-Hernandez,* 2025 WL 3012033. But given the record available to the Court, Respondents have not established a significant interest in potentially "detaining someone who [could convince] a neutral adjudicator, following a hearing and assessment of the evidence, that her ongoing detention was not warranted." *See Sampiao v. Hyde,* No. 1:25-cv-11981, ___ F.Supp.3d ___, 2025 WL 2607924, at *12 (D. Mass. Sept. 9, 2025). On balance, the factors weigh in favor of affording Petitioner an individualized custody redetermination hearing.

Accordingly, I conclude § 1226(a), not § 1225(b)(2)(A), applies and Petitioner's current detention under the mandatory detention framework in §1225(b)(2)(A) violates her Fifth Amendment right to due process. I therefore recommend the District Court **GRANT** the petition and require Respondents to hold a hearing within five business days of the Court's judgment on this Report and Recommendation for the IJ to determine whether Petitioner's release is warranted.[3]

**III. Nationwide Class**

Finally, Petitioner argues Respondents are unlawfully detaining her without a bond hearing in violation of binding federal district court precedent. (ECF #1 at PageID 18). In November 2025, the United States District Court for the Central District of California held that the government's new policy of requiring ICE to consider any noncitizen arrested in the United States and charged with being inadmissible as an applicant for admission under § 1225(b)(2)(A) and therefore subject to mandatory detention for removal proceedings conflicts with the plain language of the statute and violates due process. *Bautista v. Santacruz,* ___ F.Supp.3d ___, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025 (*Bautista I*). Days later, the district court certified a nationwide class and extended the holding of *Bautista I* and the relief granted therein to all eligible class members. *Bautista v. Santacruz,* ___ F.R.D. ___, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025) (*Bautista II*). The class included all noncitizens in the United States without lawful status who (1) entered or will enter the country without inspection; (2) were not or will not be apprehended on arrival; and (3)

---

[3] Petitioner requests her immediate release from custody or an order directing that Respondents hold a bond hearing pursuant to § 1226(a). I recommend the District Court direct that the IJ hold a bond hearing because the IJ is in a better position to evaluate whether Petitioner presents a danger to persons or property, is a threat to national security, and poses a flight risk.

are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time the DHS makes an initial custody determination. *Id.*

Petitioner maintains she is a member of that class and is therefore entitled to declaratory relief under *Bautista II*. Respondents argue *Bautista II* does not have effect outside the Central District of California, is presently on appeal to the Ninth Circuit, and the federal government should not be collaterally estopped by a lawsuit involving different parties. (ECF #6 at PageID 159-62). Because the petition may be readily determined on the merits, the District Court need not address the impact of that decision or whether Petitioner is a member of that nationwide class.

## Conclusion and Recommendation

Because 8 U.S.C. § 1225(b)(2)(A) is inapplicable to Petitioner, Respondents may not subject her to mandatory detention pending her removal. I therefore recommend the District Court **GRANT** the petition and require Respondents hold a hearing no more than five business days after disposition of this Report and Recommendation to determine whether Petitioner's release is warranted and under what conditions, if any.

Dated: February 10, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. See Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not**

merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).